IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ADALBERTO QUILES-SANTIAGO, *et al.*,

**Plaintiffs,**

v.

CARMEN G. RODRIGUEZ-DIAZ, *et al.*,

**Defendants.**

CIVIL NO. 11-1269 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants Carmen G. Rodriguez-Diaz's ("Rodriguez-Diaz"), Cesar E. Caminero-Ramos' ("Caminero-Ramos"), Hector R. Malave-Rodriguez's ("Malave-Rodriguez"), and Pedro Vazquez- Montañez's ("Vazquez-Montañez") motion to dismiss the case on Eleventh Amendment and qualified immunity grounds, and for failure to state a claim. (Docket No. 9.) For the reasons set forth below, defendants' motion to dismiss is **DENIED** on Eleventh Amendment immunity grounds but **GRANTED** for failure to state a claim pursuant to 42 U.S.C. § 1983.

### DISCUSSION

I. **Procedural Background**

On March 16, 2011, plaintiffs Adalberto Quiles-Santiago ("Quiles-Santiago") and Santos Calixto-Rodriguez ("Calixto-

Rodriguez") filed a complaint alleging political discrimination pursuant to 42 U.S.C. § 1983 ("section 1983").  They allege three constitutional violations associated with their employment: political discrimination pursuant to the First Amendment of the United States Constitution, deprivation of a property interest without due process of law pursuant to the Fifth Amendment and Fourteenth Amendments, and the denial of equal protection pursuant to the Fourteenth Amendment.  (See Docket No. 1 at ¶ 80.)  They are suing defendants in their individual capacities for damages.  (See Docket No. 1 at ¶ 81.)  They are also requesting injunctive relief against defendants to order the "reinstatement of their respective career positions" and to prohibit the defendants from political discrimination.  Id.  In addition, plaintiffs Quiles-Santiago, Calixto-Rodriguez, and their respective spouses and conjugal partnerships assert in the complaint that the Court has supplemental jurisdiction over their Commonwealth law claims.[1]

On August 29, 2011, defendants Rodriguez-Diaz, Malave-Rodriguez, and Vazquez-Montañez filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  On

---

[1] Plaintiffs bring claims pursuant to "Sections 1, 4, 6, and 7 of Article II of the Constitution of Puerto Rico and the Public Service Personnel laws of Puerto Rico:  Law No. 131 of May 13, 1943, P.R. Laws Ann., Tit. 1, Sections 13-19; and Articles 1802 and 1803 of the Civil Code, Sections 5141-5142 of Title 31." (Docket No. 1 at ¶ 85.)

September 19, 2011, all plaintiffs filed a response in opposition to defendants' motion to dismiss.[2]   (Docket No. 9.)   On November 18, 2011, defendant Caminero-Ramos filed a motion to join in defendants' motion to dismiss.  (Docket No. 17.)  On the same date, the Court granted defendant Caminero-Ramos' motion for joinder.

## II.  Factual Background

In their complaint, the plaintiffs allege the following facts:

Plaintiffs Quiles-Santiago and Calixto-Rodriguez are employees of the Commonwealth of Puerto Rico's Fire Department ("the Fire Department").  (Docket No. 1 at ¶ 1.)  They both hold the rank of "Captain" and are members of the Popular Democratic Party ("PDP").  (Docket No. 1 at ¶ 1.)  Both plaintiffs were appointed to their

---

[2]  Plaintiffs' opposition to defendants' motion to dismiss is twenty-five pages in length.  (See Docket No. 13.)  Local Rule 7(d) provides in relevant part that "non-dispositive motions and memoranda or oppositions to those motions [to dismiss] shall not exceed fifteen (15) pages in length."  Defendants failed to argue that plaintiffs violated the local rules in their submission, however, and thus waive this objection.  Therefore, the Court will consider plaintiffs' opposition to defendants' motion to dismiss, (Docket No. 13), in its entirety.

trust positions[3] during the PDP administration.  (Docket No. 1 at ¶¶ 16 and 49.)  Plaintiff Calixto-Rodriguez returned to his career position[4] when the NPP administration took over the Fire Department.  (Docket No. 1 at ¶ 51.)

Defendant Rodriguez-Diaz is the Chief of the Fire Department. (Docket No. 1 at ¶ 10.)  Defendant Vazquez-Montañez is the Assistant Chief of Extinguishing at the Fire Department.  (Docket No. 1 at ¶ 11.)  Defendant Malave-Rodriguez is the Interim Director of Human Resources of the Fire Department.  (Docket No. 1 at ¶ 12.) Defendant Cesar Caminero-Ramos is a Commander and the Zone Chief for the Ponce District of the Fire Department.  (Docket No. 1 at ¶ 13.)  All of the defendants are members of the New Progressive Party ("NPP").  (Docket No. 1 at ¶¶ 10-13.)

---

[3] Employees who are in trust positions are "freely subject to removal from [their] position[s] and, therefore, ha[ve] no claim for adverse employment or violation of First Amendment rights to free speech." Maymi v. P.R. Ports Authority, 515 F.3d 20, 26-27 (1st Cir. 2008).  Career employees, which are "government employees who do not occupy a policy-making position of confidence and trust," however, are "protected from adverse employment decisions based on political affiliation." Id. at 28. (internal citation omitted).

[4] The complaint only states that plaintiff Calixto-Rodriguez returned to his career position.  It fails to plead that plaintiff Quiles-Santiago returned to a career position.  The Court, however, will read the complaint in a light most favorable to the plaintiff and assume that he is currently in a career position.

**A.    Facts Relating to Plaintiff Quiles-Santiago**

On January 13, 2010, defendant Caminero-Ramos created a position called in Spanish the "Sub-Director"[5] for the Ponce Special Operations area and appointed an NPP supporter, Lieutenant Roberto Irizarry-Rodriguez ("Irizarry-Rodriguez") to assume this position.  (Docket No. 1 at ¶¶ 28-29.)  This position did not exist before this date.  Id.  On the same date, defendant Caminero-Ramos implemented a work schedule for plaintiff Quiles-Santiago, who was the Director of the Ponce Special Operations area at the time.  Id. This action was "unprecedented" for someone of Quiles-Santiago's level in the Fire Department.  Id.

On March 17, 2010, defendant Caminero-Ramos started a series of actions "to persecute, discriminate, marginalize and remove the duties of Quiles-Santiago because of his political affiliation to the PDP."  (Docket No. 1 at ¶ 30.)  Quiles-Santiago spoke with defendant Vazquez-Montañez about how his conditions were "substantially inferior to the norm, unreasonable and unnecessary." (Docket No. 1 at ¶ 32.)  Defendant Vazquez-Montañez replied "you should stay calm because you could lose your position."  Id. Quiles-Santiago asked him for "one reason that was not political" and defendant Vazquez-Montañez did not respond.  Id.

--------

[5] In English the title would be Deputy Director.

Examples of discriminatory actions taken by defendant Caminero-Ramos include his requesting the key to the firefighter's dormitory, (Docket No. 1 at ¶ 31), his ignoring a letter that Quiles-Santiago sent regarding situations of insubordination by Lieutenant Irizarry-Rodriguez, (Docket No. 1 at ¶ 33-34), and his approving a change in schedule without consulting Quiles-Santiago, (Docket No. 1 at ¶ 36). Defendant Caminero-Ramos, along with defendant Rodriguez-Diaz, ignored Quiles-Santiago's request to meet about his letter concerning Lieutenant Irizarry-Rodriguez's insubordination. Both defendants Caminero-Ramos and Rodriguez-Diaz assigned Quiles-Santiago to cover the vacations of other employees during the summer of 2010. (Docket No. 1 at ¶¶ 40, 42.) Furthermore, the Fire Department took away Quiles-Santiago's assigned official vehicle; he is the only Director of Special Operations that does not have an official vehicle assigned to him. (Docket No. 1 at ¶ 45.)

On June 25, 2010, Quiles-Santiago was "stripped from his position and differential," and Lieutenant Irizarry-Rodriguez was given the position instead. (Docket No. 1 at ¶ 37.) On July 12, 2010, Quiles-Santiago requested a copy of his transfer letter and defendant Malave-Rodriguez, the Interim Director of Human Resources, responded via telephone and said that the document does not exist. (Docket No. 1 at ¶ 43.)

### B.  Facts Relating to Plaintiff Calixto-Rodriguez

On June 25, 2010, defendant Rodriguez-Diaz transferred plaintiff Calixto-Rodriguez without allowing him to appeal the decision.  (Docket No. 1 at ¶¶ 53-54.)  Defendant Caminero-Ramos sent training schedules directly to the secretary and did not send them to plaintiff Calixto-Rodriguez even though protocol required him to do so.  (Docket No. 1 at ¶ 60.)  Defendant Caminero-Ramos also assigned some of plaintiff Calixto-Rodriguez's tasks to other people.  (Docket No. 1 at ¶ 60.)  In the fall of 2010, plaintiff Calixto-Rodriguez was assigned to cover the shifts of other employees workers while they were on vacation.  (Docket No. 1 at ¶ 62.)  Furthermore, "all communications that should be generated" by plaintiff Calixto-Rodriguez are now prepared by a different commander.  (Docket No. 1 at ¶ 68.)

## III. Rule 12(b)(6) Motion to Dismiss Standard

Rule 12(b)(6) allows the Court to dismiss a complaint when it fails to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), a "court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . ." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v.

Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).  When faced with a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)).  Any "[n]on-conclusory factual allegations [sic] in the complaint [,however,] must . . . be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951).  Where those factual allegations "'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Id. (quoting Iqbal, 129 S.Ct. at 1949). Furthermore, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'. Id. at 13 (citing Bell Atlantic Corp v. Twombly, 550 U.S. 544, 556 (2007)).  The relevant inquiry, therefore, "focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. at 13.

Pursuant to Rule 12(b)(6), a court will base its determination solely on the material submitted as part of the complaint or central to it. Fudge v. Penthouse Int'l. Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).  Generally, "a court may not consider documents

that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), [however,] that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (internal citation omitted). This is especially true where the plaintiff has "actual notice . . . and has relied upon these documents in framing the complaint." Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993).

## IV.  Legal Analysis

In their motion to dismiss, defendants argue (1) that plaintiffs fail to state a claim upon which relief can be granted pursuant to section 1983 because they fail to state a *prima facie* case of political discrimination pursuant to the First Amendment; (2) that plaintiffs' claims are barred by the Eleventh Amendment; (3) that plaintiffs fail to state a claim pursuant to the due process clause of the Fifth Amendment; (4) that plaintiffs fail to state a claim pursuant to the due process clause of the Fourteenth Amendment; (5) that in the alternative, defendants are entitled to

qualified immunity; and (6) that plaintiffs' supplemental jurisdiction claims should be dismissed. (See Docket No. 9.) The Court will first address defendants' Eleventh Amendment argument. Then the Court will discuss defendants' arguments regarding plaintiffs' section 1983 claim and the corresponding constitutional claims. Finally, the Court will address defendants' arguments regarding qualified immunity and supplemental jurisdiction.

###   A.    The Eleventh Amendment

        Defendants contend that plaintiffs' claims against them are barred by the Eleventh Amendment.[6]  Plaintiffs respond that while the Eleventh Amendment bars suits "against a State that require disbursements from the State's purse," the Eleventh Amendment does not bar section 1983 actions against state officials sued in their official capacity for prospective injunctive relief. (Docket No. 13 at p. 4.)  The Eleventh Amendment, they argue, also does not bar actions against state officials sued in their personal capacity for damages.  Id.  The Court agrees with the plaintiffs and finds defendants' arguments unpersuasive.  It is well-settled law that section 1983 suits against state officials in their

---

[6] The Eleventh Amendment to the United State Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any Foreign State."  U.S. Const. amend. XI.

personal and official capacities, as is this case, may proceed as long as plaintiffs do not seek a reward from the payment of state funds.  See Edelman v. Jordan, 415 U.S. 651, 677 (1974); Ex Parte Young, 209 U.S. 123, 167 (1908).  The Eleventh Amendment does not bar this section 1983 action.  Therefore, because defendants were not entitled to assert any Eleventh Amendment immunity, the Court **DENIES** defendants' motion to dismiss the case on these grounds.

**B.   Plaintiffs' Section 1983 Action**

Title 42 of the United States Code, section 1983, allows "a private right of action for violations of federally protected rights."  Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007).  The Supreme Court has held that section 1983 does not confer substantive rights, "but provides a venue for vindicating federal rights elsewhere conferred."  Marrero-Saez v. Municipality of Aibonito, 668 F. Supp. 2d 327, 332 (D.P.R. 2009) (citing Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989)).  In order to state a claim pursuant to section 1983, plaintiffs must plausibly plead (1) that they were deprived of a constitutional right; (2) that a "causal connection exists between [defendants' conduct] and the [constitutional deprivation]; and (3) that the challenged conduct was attributable to a person acting under color of state law."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983).

Civil No. 11-1269 (FAB)                                                    12

### 1.   Political Discrimination Under the First Amendment

The First Amendment[7] to the United States
Constitution embodies the right to be free from political
discrimination. <u>Barry v. Moran</u>, 661 F.3d 696, 699 (1st Cir. 2011).
The First Circuit Court of Appeals has held that the right to be
free from political discrimination prohibits government officials
from "taking adverse action against public employees on the basis
of political affiliation, unless political loyalty is an
appropriate requirement of the employment." <u>Ocasio-Hernandez v.</u>
<u>Fortuño-Burset</u>, 640 F.3d 1, 13 (1st Cir. 2011) (internal citations
omitted). A *prima facie* case of political discrimination based on
the First Amendment consists of four elements:  "(1) that the
plaintiff and defendant have opposing political affiliations,
(2) that the defendant is aware of the plaintiff's affiliation,
(3) that an adverse employment action occurred, and (4) that
political affiliation was a substantial or motivating factor for
the adverse employment action." <u>Lamboy-Ortiz v. Ortiz Velez</u>, 630
F.3d 228, 239 (1st Cir. 2010).  Moreover, each defendant's role
must be sufficiently alleged to make him or her a plausible
defendant.  <u>Ocasio-Hernandez</u>, at 16.  The Court finds that

---

[7] The First Amendment states, in relevant part, that "Congress
shall make no law . . . abridging the freedom of speech . . . or
the right of the people to peaceably assemble." <u>U.S. Const. amend.</u>
<u>I</u>.

plaintiffs have failed to state a *prima facie* case of political

discrimination because they have not adequately pled facts to show

that defendants themselves had knowledge of their [the plaintiffs']

political affiliation or that political affiliation was a

substantial or motivating factor for the alleged adverse employment

actions.

      **a.   Opposing Political Affiliations**

           The complaint contains straightforward factual

allegations with respect to element one.  The plaintiffs state that

they are active supporters of the PDP and that defendants are

members of the NPP.  (<u>See</u> Docket No. 1 at ¶¶ 10-13, 17, 20.)  When

the Court takes these factual allegations as true, the plaintiffs

have pleaded adequate factual material to support a reasonable

inference that the plaintiffs and defendants have opposing

political affiliations.

      **b.   Defendants'   Knowledge   of   Plaintiffs'
                Affiliation**

           Defendants contend that plaintiffs failed to

plead facts to show adequately that the defendants had knowledge of

the plaintiffs' political affiliation.  Defendants argue that the

complaint is insufficient because plaintiffs merely allege that

defendants knew about plaintiffs' PDP affiliation.  (Docket No. 9

at p. 9.)  The complaint, defendants argue, "does not contain any

other allegations [sic] regarding the defendants' knowledge of plaintiffs' political affiliation." Id. The Court agrees with defendants. Plaintiffs aver only the following with regard to defendants' knowledge of their political affiliation: that plaintiffs were appointed positions during PDP administrations, that plaintiffs were active supporters of the PDP, and that these facts are "well known within the Fire Department, and specifically the defendants." (Docket No. 1 at ¶¶ 16-17, 50-51.) Plaintiffs state no other facts regarding how defendants Rodriguez-Diaz, Caminero-Ramos, and Malave-Rodriguez themselves had knowledge of their political affiliation. According to the First Circuit Court of Appeals, a plaintiff must plead "discrete factual events" to show that defendants were aware of plaintiffs' political beliefs. Ocasio-Hernandez, 640 F.3d at 14-15. The Ocasio-Hernandez Court stated that it was sufficient for those plaintiffs to allege (1) that they were asked by defendants about the circumstances relating to how they obtained their jobs at the Governor's mansion; (2) that the clerical staff directly asked about the plaintiffs' political affiliations; and (3) that employees knew about and frequently discussed the political affiliations of their co-workers. Id. at 15. The plaintiffs in this case, however, do not allege any such "discrete factual events" regarding these defendants' knowledge of the plaintiffs' political leanings.

Ocasio-Hernandez, 640 F.3d at 14-15.  Plaintiffs never aver that

these defendants questioned plaintiffs about their political

affiliations or that the political affiliation of employees was

shared or discussed.  Acevedo-Concepcion v. Irizarry-Mendez,

No. 09-2133 (JAG), 2011 WL 6934791, at *3 (D. Puerto Rico, Dec. 29,

2011) (citing Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595

(1st Cir. 2011) (internal quotation marks omitted)).  "In any case,

we are not required to 'conjure up unpled allegations' to support

Plaintiffs' deficient complaint.'"  Acevedo-Concepcion, 2011 WL

6934791, at *3 (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514

(1st Cir. 1988)).  Therefore, even taking into account the

"cumulative effect of the factual allegations," plaintiffs fail to

plead plausibly that defendants Rodriguez-Diaz, Caminero-Ramos, and

Malave-Rodriguez had knowledge of their political affiliation.

Ocasio-Hernandez, 640 F.3d at 15.

          With regard to the remaining defendant,

plaintiff Quiles-Santiago does state that he told defendant

Vazquez-Montañez about how his working conditions were allegedly

"inferior to the norm, unreasonable and unnecessary and that it was

causing him personal family problems." (See Docket No. 1 at ¶ 32.)

Defendant Vazquez-Montañez allegedly told him to "stay calm because

[he] could lose [his] position." Id. Quiles-Santiago allegedly

requested that defendant Vazquez-Montañez "give him just one reason

that was not political" and Vazquez-Montañez allegedly "had no response." Id. It is unclear whether this sole alleged discussion is sufficient to prove that defendant Vazquez-Montañez had knowledge of plaintiff Quiles-Santiago's political affiliation. Plaintiff Quiles-Santiago does not plead when and where this exchange occurred. Id. At the motion to dismiss stage, however, that degree of specificity is not required. Ocasio-Hernandez, 640 F.3d at 14-15. The complaint must provide defendants with only enough detail such that defendants have "fair notice of what . . . the claim is and the grounds upon which it rests." Id. at 15 (internal citations omitted). The Court need only be able to "draw the reasonable inference" that defendant Vazquez-Montañez had knowledge of plaintiff Quiles-Santiago's political affiliation. Reading this fact in a "light most favorable to the nonmovant and draw[ing] all reasonable inferences therefrom," the Court finds that plaintiff plausibly pleads sufficient facts to show that defendant Vazquez-Montañez had knowledge of plaintiff Quiles-Santiago's political affiliation.[8] R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006).

---

[8] The Court still finds, however, that plaintiffs fail to allege facts sufficient plausibly to plead elements three and four of a First Amendment political discrimination claim with respect to defendant Vazquez-Montañez.

### c.   Adverse Employment Action

Defendants contend that plaintiffs failed to plead adequately sufficient detail that they have suffered an adverse employment action.  (Docket No. 9 at p. 8.)  For a First Amendment claim filed pursuant to section 1983, a plaintiff "need not suffer an 'adverse employment action' as that term ordinarily is used in the employment discrimination context."  Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011).  This term was first used in the Title VII context to describe the statutory requirement that a plaintiff must show:  an alteration in the material terms or conditions of his or her employment.  Id. (citing Bergeron v. Cabral, 560 F.3d 1, 7-8 (1st Cir. 2009)).  No similar requirement exists for a First Amendment claim filed pursuant to section 1983.  Id.  The First Circuit Court of Appeals has said that an adverse employment action inquiry in the First Amendment context "'focuses on whether an employer's acts, viewed objectively, place substantial pressure on the employee's political views.'"  Barton, 632 F.3d at 29 (1st Cir. 2011) (internal quotation omitted).  The Barton Court said that "more generally, [the inquiry focuses] on whether the defendants' acts would have a chilling effect on the employee's exercise of First Amendment rights."  Id.  Therefore, the "standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in other

contexts (such as Title VII)." <u>Rivera-Jimenez v. Pierluisi</u>, 362 F.3d 87, 94 (1st Cir. 2004).

For First Amendment purposes, an adverse employment action occurs "if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view." <u>Rodriguez-Garcia v. Miranda-Marin</u>, 610 F.3d 65, 66 (1st Cir. 2010) (internal citations omitted). Generally, discharging or demoting an employee, denying promotions and transfers, and failing to recall a public employee after layoffs constitute adverse employment actions. <u>Id.</u> A "substantial alteration in an employee's job responsibilities" may also constitute an adverse employment action. <u>Bergeron</u>, 560 F.3d at 8 (internal citation omitted). A denial of "special benefits and assignments" that normally come with a job may also suffice. <u>Id.</u> A court may also find an adverse employment action when the plaintiff is confronted with "a work situation unreasonably inferior to the norm for the position." <u>Rodriguez-Garcia</u>, 610 F.3d at 766 (internal citations and punctuation omitted). Even "informal harassment, as opposed to formal employment actions . . . can be the basis for the [F]irst [A]mendment claims *if the motive was political discrimination*; but this is so only if the discriminatory acts are '*sufficiently severe* to cause reasonably hardy individuals to compromise their political beliefs and

associations in favor of the prevailing party.'" <u>Welch v. Ciampa</u>,
542 F.3d 927, 937 (1st Cir. 2008) (internal citations omitted)
(emphasis added); <u>see also</u> <u>Carrasquillo-Gonzalez v. Sagardia-de</u>
<u>Jesus</u>, 723 F.Supp.2d 428, 435 (D.P.R. 2010) (quoting <u>Agosto-de</u>
<u>Feliciano v. Aponte-Roque</u>, 889 F.2d 1809, 1219 (1st Cir. 1989)
(discussing how courts consider "additional factors such as 'lost
access to telephone and photocopier, poorer office accoutrements,
worse hours'" when determining whether an adverse action occurred).

### 1.   Defendants Rodriguez-Diaz and Commander Caminero-Ramos

Both plaintiffs Quiles-Santiago and
Calixto-Rodriguez have alleged sufficient facts to plead plausibly
that they have been subjected to adverse employment actions by
defendants Rodriguez-Diaz and Caminero-Ramos.  Plaintiff Quiles-
Santiago and Calixto-Rodriguez plausibly described that as a result
of defendant Rodriguez-Diaz and Caminero-Ramos' actions, (1) they
were treated differently from others who held the same rank; and
(2) they had their job duties changed and/or curtailed.
Additionally, plaintiff Quiles-Santiago plausibly pleads that he
was (3) denied benefits that come with the normal course of the
job.

First, both plaintiffs allege that defendant Rodriguez-Diaz "reassigned" them to "cover vacations[9] of individuals at great distances from their homes, despite there being individuals of the same rank to cover such absences in staff." (Docket No. 1 at ¶¶ 21, 61-62.) Specifically, plaintiff Quiles-Santiago describes two incidents during the summer of 2010 where he was sent to cover the vacations of officers in a different district and contends that such coverage generally comes from within the same district. (Docket No. 1 at ¶¶ 41-43.) Plaintiff Calixto-Rodriguez alleges that defendant Rodriguez-Diaz suddenly transferred him on June 25, 2010 without "any right of appeal." (Docket No. 1 at ¶¶ 53-54.) Furthermore, plaintiff Calixto-Rodriguez also alleges that he was sent to the Caguas area to cover another officer's vacations during the fall of 2010. (Docket No. 1 at ¶ 62.)

Second, both plaintiffs also contend that their supervisory duties have been "curtailed, circumvented and/or eliminated all together." (Docket No. 1 at ¶ 21.) Plaintiff Quiles-Santiago alleges that on April 20, 2010, he was not consulted about a change in schedule, "as was required." (Docket No. 1 at ¶ 36.) On that same date, Quiles-Santiago contends that

---

[9]  Plaintiffs sometimes characterize these reassignments as transfers. (See Docket 1 at ¶¶ 43, 72.)

he was not "notified of decisions" and that on June 25, 2010, he
was "officially stripped from his position and differential, both
of which was given to a lower ranking official."[10]  (Docket No. 1
at ¶¶ 37-38.)   Defendant Caminero-Ramos also allegedly imposed a
work schedule on plaintiff Quiles-Santiago, an action which Quiles-
Santiago describes as "unprecedented" for someone at his level in
the Fire Department.  (Docket No. 1 at ¶ 28.)   Similarly, plaintiff
Calixto-Rodriguez also alleges that defendant Caminero-Ramos
stripped him of his duties by delegating a lower ranking officer to
attend meetings, "coordinate services or give conferences."
(Docket No. 1 at ¶ 60.)   Furthermore, plaintiff Calixto-Rodriguez
contends that his supervisory duties, such as communications that

---

[10] Plaintiff Quiles-Santiago fails to state, however, exactly which
defendant engaged in these actions.  (Docket No. 1 at ¶¶ 37-38.)
The Court will read the complaint in a light most favorable to the
plaintiff and draw the reasonable inference that plaintiff makes
these claims about defendant Caminero-Ramos because he mentioned in
a previous paragraph that "[o]n March 17, 2010[,] Cmdr. Caminero-
Ramos started a series of actions to persecute, discriminate,
marginalize and remove the duties of Quiles-Santiago . . ." (Docket
No. 1 at ¶ 30.)

should have been prepared by one in his position, was reassigned to a different officer.[11]   (Docket No. 1 at ¶ 68.)

Third, plaintiff Quiles-Santiago also avers that he has been denied benefits that occur in the normal course of their job.  He alleges that the Fire Department[12] took away his assigned vehicle while other similarly situated officers have assigned vehicles.  (Docket No. 1 at ¶¶ 45-46.)

The Court treats these non-conclusory factual allegations as true and finds that plaintiffs Quiles-Santiago and Calixto-Rodriguez allege sufficient facts to plead plausibly that adverse employment actions occurred as a result of defendants Rodriguez-Diaz's and Caminero-Rivero's actions.

---

[11] Plaintiff Calixto-Rodriguez also fails to state who stripped him of those duties.  Again, the Court will read the complaint in a light most favorable to the plaintiff and draw the reasonable inference that plaintiff makes these claims about defendant Caminero-Ramos because plaintiff Calixto-Rodgriuez previously discussed the removal of duties in relation to defendant Caminero-Ramos.  (Docket No. 1 at ¶ 60.)

[12] It is unclear from the complaint who approved this action.  The complaint fails to state exactly who took his vehicle away.  (See Docket No. 1 at ¶ 45.)  Again, the Court will read the complaint in a light most favorable to the plaintiff and draw the reasonable inference that plaintiff makes these claims about either defendant Rodriguez-Diaz or defendant Caminero-Ramos because plaintiff previously discussed the removal of duties in relation to these defendants.  (Docket No. 1 at ¶¶ 34-35.)

### 2. Defendants Vazquez-Montañez and Malave-Rodriguez

With regard to defendants Vazquez-Montañez and Malave-Rodriguez, however, plaintiff Quiles-Santiago[13] fails to allege sufficient facts to plead plausibly that these defendants subjected him adverse employment actions. Plaintiff Quiles-Santiago alleges only that defendant Vazquez-Montañez told him to "stay calm because [he] could lose [his] position" when plaintiff confronted Vazquez-Montañez about how "his conditions was [sic] substantially inferior to the norm, unreasonable and unnecessary and that it was causing him personal and family problems." (Docket No. 1 at ¶ 32.) Quiles-Santiago allegedly requested that defendant Vazquez-Montañez "give him just one reason that was not political" and Vazquez-Montañez allegedly "had no response." Id. This isolated incident, objectively evaluated, would not "place substantial pressure on even one of thick skin to conform to the prevailing political view." Rodriguez-Garcia, 610 F.3d at 66 (1st Cir. 2010). Nor could this interaction be described as a "sufficiently severe" harassment. Welch v. Ciampa, 542 F.3d at 937 (1st Cir. 2008) (internal citations omitted); see Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006) (describing how a

---

[13] Plaintiff Calixto-Rodriguez does not mention either defendant Vazquez-Montañez or Malave-Rodriguez in his factual allegations.

"*substantial campaign* of harassment . . . can form the basis of a § 1983 claim") (emphasis added); <u>Blackie v. Maine</u>, 75 F.3d 716, 725 (1st Cir. 1996) (describing how the employer must "(1) *take* something of *consequence* from the employee . . . or (2) withhold from the employee an accoutrement of the employment relationship" in order for an employee to establish an adverse employment action) (emphasis added).

The same analysis applies to defendant Malave-Rodriguez's alleged actions. Plaintiff Quiles-Santiago avers that on July 12, 2010, defendant Malave-Rodriguez ignored his request for a copy of his transfer letter. (Docket No. 1 at ¶ 32.) In the same paragraph, however, he admits that defendant Malave-Rodriguez called Quiles-Santiago to say that the "document doesn't exist." <u>Id.</u> Therefore, defendant Malave-Rodriguez did not ignore plaintiff's request and even if he did, such an action does not qualify as an adverse employment action. Defendant Malave-Rodriguez did not take something of consequence from plaintiff nor did he deprive plaintiff of any "accoutrement of the employment relationship." <u>Blackie</u>, 75 F.3d at 725 (1st Cir. 1996).

Therefore, even if the Court treats these non-conclusory factual allegations as true, plaintiff Quiles-Santiago fails to allege sufficient facts to plead plausibly that

adverse employment actions occurred as a result of defendant Vazquez-Montañez's actions.

### d. Political Affiliation as a Substantial Factor for Adverse Employment Action

Defendants contend that plaintiffs failed to plead adequately that the plaintiffs' political affiliation "was a substantial factor for such adverse employment action." (Docket No. 9 at p. 8.) The Court agrees with the defendants. Even if plaintiffs allege sufficient facts to plead plausibly the existence of the first three required elements to establish a First Amendment political discrimination claim, which the Court finds that they fail to do, plaintiffs have stated virtually no facts to indicate that their political affiliation was a substantial factor for the alleged adverse employment actions.

In addition to the previous three elements, plaintiffs must also plead facts sufficient to support "a reasonable inference that plaintiffs' political affiliation was a substantial or motivating factor in the defendants' conduct." Ocasio-Hernandez, 640 F.3d at 16. Plaintiffs must plead facts specifying the role of each defendant in the adverse employment action. Id. The First Circuit Court of Appeals has stated that while plaintiffs are not required to bring forward "smoking gun" evidence, Welch, 542 F.3d at 940 (internal citations omitted),

plaintiffs must do more than "[m]erely juxtapose a 'protected characteristic - someone else's politics - with the fact that the plaintiff was treated unfairly.'" Pequero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (internal citations omitted).  For example, an adverse employment action that takes place shortly after a change in political administration "unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated." Ocasio-Hernandez, 604 F.3d at 18 (internal citation omitted).  A politically charged work atmosphere may also suggest that plaintiff's political affiliation was a substantial or motivating factor in the defendants' conduct.  Id. at 17.  Mere conclusory statements that plaintiffs faced an adverse employment action because of the plaintiffs' political affiliation, however, are insufficient to survive a motion to dismiss.  See id. at 12.

          In regard to discriminatory animus, the complaint contains only "naked assertions devoid of further factual enhancement."  Iqbal, 129 S.Ct. at 1949 (internal punctuation omitted).  For example, the plaintiffs aver that they were "illegally transferred and discriminated against by the defendants, simply because they are members of the Popular Democratic Party" but allege no facts to support this contention.  (Docket No. 1 at ¶ 1.)  In fact, nearly all of the plaintiffs' allegations that

their political affiliation was the motivating factor behind
defendants' actions are threadbare assertions and boilerplate
statements added to plaintiffs' description of alleged adverse
employment actions. (See Docket No. 1 at ¶¶ 30, 35, 45, 47, 48,
62, 63, 68, 70.) While the First Circuit Court of Appeals has
rejected a heightened pleading standard, see Educadores
Puertorriqueños en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir.
2004), plaintiffs may not make threadbare statements. Plaintiffs
"may not prevail simply by asserting an inequity and tacking on the
self-serving conclusion that the defendant was motivated by a
discriminatory animus." Correa-Martinez v. Arrillaga-Belendez, 903
F.2d 49, 53 (1st Cir. 1990) (discussing the no-bald-assertions
standard). This is exactly what plaintiffs do in their complaint.

          Plaintiffs' set of facts do not allow for a
plausible inference of political discrimination. In Ocasio-
Hernandez, the leading First Circuit Court of Appeals case that is
on point, the plaintiffs alleged that defendants (1) had a list of
PDP workers who were to be fired, (2) made disparaging remarks
about the previous PDP administration, (3) inquired about
plaintiffs' political affiliation, and (4) terminated and replaced
plaintiffs in less than ten weeks after the change in political
administration. Ocasio-Hernandez, 640 F.3d at 18. The Ocasio-
Hernandez Court found that this was sufficient to allow for a

plausible inference of political discrimination.  In contrast, the plaintiffs in this case have not pled anywhere in their complaint that the work environment was politically charged.  (See Docket No. 1.)  In addition, the plaintiffs' first alleged "illegal" transfers occurred in January 2010,[14] one year after the NPP administration came to office.  (Docket No. 1 at ¶ 28; Docket No. 13 at ¶ 1.)  These facts and all of the conclusory statements made by plaintiffs do not allow the Court to draw a *plausible* inference that any of defendants' actions occurred because of political discrimination.  While it is *conceivable* that these actions are due to political discrimination, the Supreme Court "requires that the claims be *plausible*, not merely possible." Acevedo-Concepcion, 2011 WL 6934791, at *4 (citing Ashcroft v.

_____

[14] Plaintiff Quiles-Santiago also alleges that he was sent to cover one Commander's vacation in August 2009.  (Docket No. 1 at ¶ 25.) First Amendment claims for political discrimination that are brought pursuant to section 1983, however, have a one-year statute of limitations.   "Because it has no internal statute of limitations, section 1983 claims 'borrow[] the appropriate state law governing limitations unless contrary to federal law.'" Marrero-Guitierrez, 491 F.3d at 1 (citing Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003)).   In Puerto Rico, section 1983 claims are subject to a one-year statute of limitations.   Morales-Tañon v. Puerto Rico Elec. Power Authority, 524 F.3d 15, 18 (1st Cir. 2008).   Plaintiffs filed this complaint on March 16, 2011, which is past the one-year statute of limitations.  Therefore, the Court will not consider this incident in its analysis.  Even if the Court were to consider the incident, however, it occurred eight months after the NPP administration took office and thus, did not take place shortly after a change in political administration.

Iqbal, 129 S.Ct. at 1951 (internal punctuation omitted)).

Therefore, the plaintiffs fail to allege sufficient facts to plead plausibly that their political affiliation was a substantial or motivating factor for defendants' alleged adverse employment actions.

Because plaintiffs Quiles-Santiago and Calixto-Rodriguez fail to allege sufficient facts to plead plausibly elements two and four of a *prima facie* case of political discrimination, their First Amendment political discrimination claims are **DISMISSED WITH PREJUDICE.**

### 2.   The Fifth Amendment

Defendants argue that plaintiffs fail to state a due process claim under the Fifth Amendment. (Docket No. 9 at p. 14-15.)  The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.  The First Circuit Court of Appeals has held consistently that the Fifth Amendment is inapplicable to causes of action against the Commonwealth of Puerto Rico and private persons. See, e.g., Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007).  The plaintiffs do not bring suit against the federal government or any federal actors; rather they bring this suit against defendants in their individual and official capacities as

employees of the Commonwealth of Puerto Rico's Fire Department.
Therefore, the Court agrees with the defendants.  Plaintiffs
Quiles-Santiago's and Calixto-Rodriguez's Fifth Amendment claims
are **DISMISSED WITH PREJUDICE.**

### 3.    The Fourteenth Amendment

The Fourteenth Amendment to the Constitution states,
in relevant part, "nor shall any state deprive any person of life,
liberty, or property, without due process of law (the "Due Process
Clause"); nor deny to any person within its jurisdiction the equal
protection of laws (the "Equal Protection Clause")."  U.S. Const.
amend. XIV.   The Court will address arguments regarding both
clauses in turn.

### a.    Equal Protection Clause

Defendants argue that plaintiffs' claim under
the Equal Protection Clause must be dismissed because plaintiffs
may not "assert parallel claims under the First Amendment and the
Equal Protection Clause for the same [alleged] discriminatory
conduct."  (Docket No. 9 at p. 20.)  Plaintiffs do not make any
arguments regarding the Equal Protection Clause in their opposition
to defendants' motion to dismiss.  (See Docket No. 13.)

The Equal Protection Clause requires that
similarly situated individuals to be treated in a similar manner.
See Marrero-Gutierrez, 491 F.3d at 9–10 (citing City of Cleburne v.

Cleburne Living Ctr., 473 U.S. 432 (1985)).  "An equal protection

claim alleging political discrimination [,however,] merely restates

a First Amendment political discrimination claim and . . . [should

be] considered under the First Amendment."  Uphoff Figueroa v.

Alejandro, 597 F.3d 423, 426, 430 n. 8 (1st Cir. 2010); Pagan v.

Calderon, 448 F.3d 16, 36 (1st Cir. 2006).

        The plaintiffs' Equal Protection Clause claim

is based on the exact same set of facts in their First Amendment

political discrimination claim:  that defendants allegedly

discriminated against them because of their PDP membership.

(Docket No. 1 at ¶¶ 79-80).  Therefore, because plaintiffs' claim

pursuant to the Equal Protection Clause merely reiterates their

First Amendment discrimination claim, their Equal Protection Clause

claims are **DISMISSED WITH PREJUDICE.**

        **b.   Due Process Clause**

        Defendants also assert that plaintiffs' due

process claims should be dismissed.  Plaintiffs may assert two

types of due process rights:  substantive due process and

procedural due process.  Maymi, 515 F.3d at 29.  Plaintiffs fail to

specify which type of due process claim they are pursuing.

Therefore, in an abundance of caution, the Court will analyze

plaintiffs' claims under both substantive and procedural due

process.   The Court finds that plaintiffs' Fourteenth Amendment claims fail under either type of due process argument.

### i.   Substantive Due Process

Similar to political discrimination claims brought under the Equal Protection Clause, the First Circuit Court of Appeals has held that substantive due process "is an inappropriate avenue of relief" when the conduct at issue is covered by the First Amendment. Pagan, 448 F.3d at 33. "It is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination or retaliation." Id. at 34-35.   Thus, when "allegations of political discrimination and retaliation are covered by the First Amendment, those allegations cannot serve as a basis for a substantive due process claim." Id. at 34. Therefore, plaintiffs' substantive due process claims are **DISMISSED WITH PREJUDICE.**

### ii.   Procedural Due Process

A state may not discharge a public employee who possesses a property interest in continued employment without due process of law. Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006).   To state a claim under a procedural due process theory, plaintiffs must plausibly plead that they were "[1] deprived of a property interest, [2] by defendants acting

under color of state law, and [3] without the availability of a constitutionally adequate process." <u>Maymi</u>, 515 F.3d at 20 (1st Cir. 2008) (internal citation omitted).

With regard to the first element, property interests are not derived from the Constitution of the United States; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . ." <u>Colon-Santiago</u>, 438 F.3d at 108 (1st Cir. 2006).  The First Circuit Court of Appeals has turned consistently to Puerto Rico law for guidance on property interests. <u>Id.</u>, <u>see also</u> <u>Santana v. Calderon</u>, 342 F.3d 18, 23-24 (1st Cir. 2003).  Puerto Rico law grants career employees a property interest in their continued employment and therefore, their job.  <u>Colon-Santiago</u>, 438 F.3d at 108; <u>see also</u> <u>Ruiz-Casillas v. Camacho-Morales</u>, 415 F.3d 127, 134.  Public employees do not have a property interest, however, in the duties and functions that they perform for their employer.  <u>Ruiz-Casillas</u>, 415 F.3d at 134 (holding that the plaintiff did not have a claim under the Fourteenth Amendment because he only had his duties downgraded but he was not fired).  Plaintiffs Quiles-Santiago and Calixto-Rodriguez were not terminated from their positions.  Instead, their alleged "continued reassignments" are the basis of their due process claim.  (Docket No. 1 at ¶ 76.)  Because plaintiffs have

failed to plead plausibly that they have been deprived of a property interest, their procedural due process claim fails. Therefore, plaintiffs' due process claims are **DISMISSED WITH PREJUDICE.**

### c.    Qualified Immunity

"The threshold inquiry [when determining whether an official is entitled to qualified immunity] is whether the plaintiff's allegations, if true, establish a constitutional violation." Siegert v. Gilley, 500 U.S. 226, 232 (1991).  Because the plaintiffs have failed to plead plausibly a constitutional violation by the defendants, the Court need not address the qualified immunity defense asserted by defendants. Ruiz-Casillas, 415 F.3d at 134 (internal citations omitted).

## V.   Plaintiffs' Supplemental State Law Claims

Because the Court dismisses plaintiffs' section 1983 action, no federal claims remain on which to ground jurisdiction over plaintiffs' claims pursuant to Commonwealth law.  The Court declines to exercise its supplemental jurisdiction over the Commonwealth law claims.  Plaintiffs's supplemental Commonwealth law claims are therefore **DISMISSED WITHOUT PREJDUICE** pursuant to 28 U.S.C. § 1367(c)(3).

## VI.  Conclusion

For the reasons expressed, the Court **DENIES** defendants' motion to dismiss the case on Eleventh Amendment grounds but **GRANTS** defendants' motion to dismiss the case with prejudice for failure to state a claim.

Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE** and their Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

This case is **DISMISSED** in its entirety.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 2, 2012.


                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE